## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CESAR ORTEGA CAMPOVERDE, | : | Civil No. 4:20-CV-00332 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| CLAIR DOLL, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is a habeas corpus case brought under 28 U.S.C. § 2241 by an immigration detainee.  Petitioner Julio Cesar Ortega Campoverde ("Campoverde") is detained in York County Prison in York, Pennsylvania pursuant to 8 U.S.C. § 1226(a).  Campoverde asserts that his detention violates § 1226(a) and the United States Constitution because the immigration judge who heard his case did not consider his ability to pay bail in setting a $10,000 bond for his release, and because the government did not bear the burden of proof during his bond hearing.  Campoverde requests that the court order his immediate release from detention or remand the matter for an additional bond hearing at which the government would bear the burden of proof and the immigration judge would be required to consider his ability to pay.  For the reasons that follow, the court concludes that it lacks subject matter jurisdiction over Campoverde's ability to pay claim.  The court additionally concludes that the petitioner bears the burden of proof during bond

hearings under § 1226(a), and that such an allocation of the burden of proof does not violate the Constitution. Accordingly, Campoverde's petition for writ of habeas corpus is denied.

## FACTUAL BACKGROUND

Campoverde is a citizen of Ecuador who entered the United States in 1998. (Doc. 1 at 5; Doc. 19 at 11.) After entering the country, Campoverde lived in New Jersey for a time before marrying a United States citizen and moving to Allentown, Pennsylvania. (Doc. 1 at 6.)

In July 2018, Campoverde was arrested in Allentown and charged with simple assault, harassment, and disorderly conduct. (Doc. 1 at 8; Doc. 19 at 11.) Campoverde pleaded guilty to one count of simple assault and was sentenced to one year of probation. (*Id.*) While on probation, Campoverde was arrested by an officer from Immigration and Customs Enforcement ("ICE"). (*Id.*) ICE subsequently served Campoverde with a notice to appear charging him as removable from the United States on August 9, 2018. (Doc. 19-1 at 7–8.) ICE then determined on the same day that Campoverde would remain detained. (*Id.* at 10.)

On September 27, 2018, Campoverde had a bond hearing before an immigration judge. The immigration judge determined that Campoverde was subject to mandatory detention under 8 U.S.C. § 1226(c) because his conviction for

simple assault constituted a crime of moral turpitude. (Doc. 1 at 9; Doc. 19 at 12.) The immigration judge then ordered Campoverde's removal from the country on November 13, 2018. (*Id.*) Campoverde appealed this ruling to the Board of Immigration Appeals ("BIA"). (*Id.*)

In February 2019, Campoverde sought collateral relief from his criminal conviction under Pennsylvania's Post-Conviction Relief Act ("PCRA"), asserting that he had been unaware of the immigration consequences of his simple assault conviction at the time of his guilty plea. (Doc. 1 at 9.) While the PCRA proceedings were ongoing, the BIA concluded that the immigration judge had erred in classifying Campoverde's simple assault conviction as a crime of moral turpitude and remanded the case back to the immigration judge. (Doc. 1 at 10; Doc. 19 at 12.) The government requested reconsideration of the BIA's decision, arguing that the board had applied the wrong standard of review. (*Id.*)

On May 14, 2019, the Lehigh County Court of Common Pleas granted Campoverde's PCRA petition and vacated his simple assault conviction. (Doc. 1 at 10; Doc. 19 at 13 n.3.) Campoverde then resolved the charges from his 2018 arrest by pleading guilty to two summary counts of disorderly conduct and two summary offenses of harassment. (Doc. 1 at 10.) He was again sentenced to probation. (*Id.*) After receiving PCRA relief, Campoverde filed an application for cancellation of removal. (Doc. 1 at 10; Doc. 19 at 13.)

As of October, 2019, Campoverde was represented in the immigration proceeding by a pro bono attorney from a non-profit organization in Philadelphia.[1] On October 16, 2019, Campoverde's pro bono counsel filed a renewed motion for custody redetermination hearing.  (Doc. 25 at 2; Doc. 25-1 at 1-7.)  Among various arguments raised in the motion, Campoverde's counsel asserted that Campoverde and his family are in "dire financial straights [sic]" and they have an "almost complete lack of funds."  (Doc. 25-1 at 6.)  Campoverde's counsel submitted multiple exhibits in support of the motion, several of which related to financial concerns.  (Doc. 25-1.)  For this reason, the motion requested that Campoverde be released on his own recognizance "as a bond may prove impossible to pay due to his detainment and the dire financial circumstances."  (Doc. 25-1 at 6.)

On November 5, 2019, Campoverde received a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).[2]  (Doc. 1 at 11; Doc. 19 at 14).  Campoverde was represented at the hearing by his pro bono counsel.  The immigration judge required Campoverde to carry the burden of proof during the bond hearing.  (Doc. 1 at 11.)  In presenting Campoverde's case, Campoverde's counsel introduced updated documentary evidence of his family's "dire financial

---

[1] Campoverde is represented by different attorneys in the instant habeas corpus case.
[2] Campoverde's legal status changed from detention under § 1226(c) to detention under § 1226(a) both because of the BIA's decision that Campoverde's simple assault conviction did not constitute a crime of moral turpitude and because his conviction for simple assault was vacated when he was granted PCRA relief.

straits." (Doc. 19-1 at 48.)  Campoverde and his wife then testified about the

incident that led to his 2018 arrest.  (*Id.* at 50–62, 65–67, 69–73.)  At the

conclusion of this testimony, the immigration judge asked Campoverde's counsel

if he wished to present anything further on Campoverde's behalf, and

Campoverde's counsel stated that he had nothing further.  (*Id.* at 75.)

The immigration judge determined that a bond was appropriate and set the

bond at $10,000.  (Doc. 1 at 12; Doc. 19 at 14.)  In making the bond determination,

the immigration judge provided the following reasoning:

> Considering everything before me, I am concerned, obviously, with the
> nature of the offense that led to the conviction, but I do acknowledge
> the conviction was dropped from the simple assault and a guilty plea
> was vacated, and he was convicted of harassment and the disorderly
> conduct.  The wife is here to testify.  It's really unclear what happened
> that day, but he was convicted of the disorderly conduct and the
> summary [offenses.] . . . But I also acknowledge the equities that he's
> now seeking the relief before the Court, so I am going to set a bond.
> It'll be in the amount of $10,000.  I'll reserve appeal for both parties.

(Doc. 19-1 at 76.)  After setting the bond amount, the immigration judge again

asked Campoverde's counsel if he had anything else he wished to say, at which

point Campoverde's counsel began to make an argument based on Campoverde's

ability to pay the bond.  (*Id.* at 76–77.)  The immigration judge then interrupted

Campoverde's counsel, stating, "And that's going to be the Court's decision, Mr.

Muñoz."  (*Id.* at 77.)

The Immigration Judge reserved the right to appeal for Campoverde and the agency. (Doc. 19-1 at Ex. 9 and Ex. 10.) However, Campoverde did not file an appeal to the BIA. (Transcript of Oral Argument at 22.)[3]

Following the bond hearing, the BIA denied the government's motion for reconsideration of its earlier order as moot on December 23, 2019. (Doc. 1 at 11 n.2; Doc. 19 at 13.) The government then scheduled a hearing on Campoverde's application for cancellation of removal. (Doc. 1 at 11; Doc. 19 at 13–14.) That hearing is currently scheduled to proceed on April 8, 2020. (*Id.*)

## PROCEDURAL HISTORY

Campoverde filed the petition for writ of habeas corpus that initiated this case on February 24, 2020. (Doc. 1.) The next day, Campoverde filed a motion for temporary restraining order and/or preliminary injunction, a brief in support of his motion, and a brief in support of his petition. (Docs. 2–3, 8.) The court immediately scheduled a hearing on the motion for February 28, 2020. (Doc. 7.)

In advance of the scheduled hearing, the court conducted a telephonic status conference with the parties on February 27, 2020. Based on agreements reached during the conference, the court rescheduled the hearing for March 10, 2020, consolidated the petition and motion for purposes of the court's resolution, and set

---

[3] At the court's request, the assigned court reporter provided an unofficial transcript of the oral argument that occurred on March 10, 2020. All citations to the transcript in this opinion are to the unofficial version.

6

an expedited briefing schedule.  (Doc. 17.)  Respondents filed a brief in opposition on March 3, 2020, and Campoverde filed a reply brief on March 5, 2020.  (Docs. 19, 22.)  Oral argument on the petition and motion occurred on March 10, 2020. Following oral argument, the court ordered the parties to file supplemental briefs on the issue of whether Campoverde has standing to argue that an immigration judge must consider a detainee's ability to pay during a bond hearing.  (Doc. 27.) The parties filed the court-ordered briefs on March 12, 2020.  (Docs. 29–30.)

## STATUTORY BASIS FOR CAMPOVERDE'S DETENTION

Campoverde is detained under 8 U.S.C. § 1226(a), which allows the government to detain an alien "pending a decision on whether the alien is to be removed from the United States."  Under § 1226(a) and its implementing regulations, the initial determination of whether to detain an alien pending a removal decision is made by an ICE officer.  8 C.F.R. § 236.1(c)(8).  The alien may then seek review of the initial custody determination by an immigration judge. *Id.* § 236.1(d)(1).  Such a proceeding is commonly referred to as a "bond hearing."

Section 1226(a) allows the government to release an alien either on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or "conditional parole."  *Id.* § 1226(a)(1)–(2).  In a bond hearing under § 1226(a), the alien has the burden to prove "that he or she merits release on bond."  *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

In determining whether an alien should be released from detention, an immigration judge "has broad discretion in deciding the factors he or she may consider." *Id.* Although an immigration judge is not precluded from considering an alien's ability to pay, several decisions from the BIA have held that immigration judges are not required to consider ability to pay. *See, e.g.*, *In re Balbuena Rivera*, 2010 WL 691275, at *1 (BIA Feb. 16, 2010); *In re Castillo-Cajura*, 2009 WL 3063742, at *1 (BIA Sept. 10, 2009); *In re Sandoval-Gomez*, 2008 WL 5477710, at *1 (BIA Dec. 15, 2008).

## STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In determining whether habeas corpus relief is appropriate in the immigration context, the court's review is limited "to questions of constitutional and statutory law." *Bakhtriger v. Elwood*, 360 F.3d 414, 424 (3d Cir. 2004), *superseded by statute on other grounds*, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005). The court may not examine "the exercise of discretion or weight of the evidence in the underlying removal proceedings." *Id.*

## THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO DECIDE CAMPOVERDE'S ABILITY TO PAY CLAIM

Before considering the merits of Campoverde's petition, the court must address Respondents' argument that the court does not have subject matter jurisdiction to decide this case. (*See* Doc. 19 at 25–32.) Respondents argue that two provisions of the Immigration and Nationality Act ("INA")—8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii)—bar this court from exercising subject matter jurisdiction. (*Id.*)

Under 8 U.S.C. § 1226(e), the court may not review the government's "discretionary judgment" regarding the application of § 1226. "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." *Id.* Although § 1226(e) bars the court's review of an immigration judge's discretionary judgment, the statute does not bar review when a petitioner challenges the INA's "statutory framework" or contests the constitutionality of the statute. *Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 841 (2018).

Section 1252(a)(2)(B)(ii) similarly bars courts from reviewing decisions that are committed to agency discretion under the INA. Like § 1226(e), however, the jurisdictional bar under § 1252(a)(2)(B)(ii) does not apply where a petition raises purely legal questions that do not implicate agency discretion. *Robinson v.*

*Napolitano*, 554 F.3d 358, 360 (3d Cir. 2009) (citing *Pinho v. Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005)).

As a threshold matter, the court must address whether it has subject matter jurisdiction to consider Campoverde's ability to pay argument under the jurisdictional bars of § 1226(e) and § 1252(a)(2)(B)(ii). Although Campoverde couches his argument as a constitutional challenge to the statutory framework of § 1226(a), Respondents contend that Campoverde's ability to pay argument is "a veiled attempt to challenge the 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release . . ." (Doc. 19 at 25.) This debate over how the issue is framed was addressed in the parties' briefs and at oral argument.

Campoverde's counsel asserted during oral argument that the jurisdictional bars of § 1226(e) and § 1252(a)(2) do not bar jurisdiction in this case. In making this argument, counsel characterized the interplay between the jurisdictional issue and the merits of this case as a "chicken and egg" problem. (Transcript of Oral Argument at 2:7, 3:6–7.) Counsel acknowledged that challenges to the exercise of an immigration judge's discretion are barred by § 1226(e) and § 1252(a)(2), but argued that as long as such challenges are properly reframed as constitutional arguments, they may proceed. (*See id.* at 30–31 ("[I]f somebody says I got $15,000 bail, that's just too high . . . that is a challenge to a discretionary decision.

You can make that exact same challenge though . . . in a way that does give the court jurisdiction by making a constitutional challenge to the entire framework."); *id.* at 75 ("[I]f Mr. Campoverde had filed a habeas [petition] and said some of the things that we were talking about what happened at that hearing, the judge didn't really consider properly my family history in deciding I have $10,000 bail and it was arbitrary and unfair, etc., this court wouldn't have jurisdiction.  It has to be framed as a constitutional question.").

Although it may be true that many challenges to an immigration judge's discretion may be reframed as constitutional claims, that premise implies that the converse is also true: arguments that are framed as constitutional claims may be reframed as challenges to an immigration judge's discretion.  Ultimately, the court's task is to determine whether an argument—in substance—presents a constitutional challenge or merely challenges the exercise of an immigration judge's discretion, regardless of how such an argument is framed by counsel.

Campoverde's argument is framed as a constitutional and statutory claim that an immigration judge must consider a detainee's ability to pay in setting bond, but the facts of the case show that his ability to pay actually *was* considered during his bond hearing.

Counsel for Campoverde and Respondents provided additional background relevant to the jurisdictional question during oral argument on March 10, 2020.

During the oral argument, the parties agreed that Campoverde's motion for custody redetermination and supporting exhibits were submitted to the court prior to the bond hearing.[4]  (Transcript of Oral Argument at 33–34.) In that motion, Campoverde asserted that his wife "ha[d] been supporting the family without any income from [Campoverde] for over a year," that she was in "dire financial straights [sic]," and that she owed "thousands of dollars in utility bills." (Petitioner's Exhibit F., Doc. 25-1 at 6.)  The motion further stated that Campoverde "ha[d] no funds," and that he and his wife together had an "almost complete lack of funds."  (*Id.*)  Given those financial circumstances, Campoverde requested that the immigration judge "release him on his own recognizance as a bond may prove impossible to pay due to his detainment and the dire financial circumstances."  (*Id.*)

Campoverde attached numerous exhibits to his motion for custody redetermination before the immigration judge, several of which provided additional information on Campoverde's ability to pay a bond.  First, Campoverde attached a copy of his application for cancellation of removal, which stated that since 2015 he had been earning $300 a week as a self-employed construction worker.  (*Id.* at 100.)  The application further stated that he and his wife received

---

[4] The motion and supporting exhibits that were filed before the immigration judge are docketed at Petitioner's Exhibit F at Doc. 25-1 on CM-ECF.

12

assistance through the Supplemental Nutritional Assistance Program ("SNAP"),
cash assistance, and medical assistance. (*Id.* at 101.) Second, Campoverde
attached a declaration from his wife, who stated that the family so lacked funds
that they were "almost homeless," and that their church had to help them buy
school uniforms for their children. (*Id.* at 134.) Campoverde's wife further stated
that without his income, she had fallen behind on her electricity bill, and that the
SSI and welfare benefits she received were her only sources of income without
Campoverde's income. (*Id.* at 135.) Third, Campoverde provided copies of
overdue electric bills that showed outstanding account balances of $6,901.97 in
January 2019 and $8,944.96 in May 2019. (*Id.* at 138–39.) Fourth, Campoverde
provided copies of bank statements showing account balances of zero dollars or
less in April and May of 2019. (*Id.* at 140–46.)

In addition to the fact that he submitted the motion for custody
redetermination and supporting exhibits prior to his bond hearing, the parties also
agreed that Campoverde was allowed to present updated exhibits during the bond
hearing regarding his ability to pay. (Transcript of Oral Argument at 35:4–16.)
The parties further agreed that Campoverde had presented an argument regarding
his ability to pay through the filing of his motion for custody redetermination. (*Id.*
at 36–37, 42.) While Campoverde's counsel noted that the immigration judge cut
off Campoverde's argument regarding ability to pay during the hearing, counsel

also acknowledged that the evidence submitted in conjunction with the motion for custody redetermination "speaks for itself in terms of . . . the amounts due, the utilities, and also the SSI benefits for three of the children, which is a means based benefit, government benefit, and therefore ability to pay is considered in giving that benefit . . . [which] goes to our client's . . . financial struggles." (*Id.* at 36–37.)

After receiving that evidence and hearing testimony from Campoverde and his wife, the immigration judge stated that she had "consider[ed] everything before her" as well as "the equities," and then determined that a bond of $10,000 was appropriate. (*Id.* at 76.) Although the immigration judge did not expressly reference Campoverde's ability to pay when rendering her decision, she also did not specifically reference *any* factor except the nature of the offense. (Doc. 19-1 at 76.) The immigration judge did not state that she was refusing to consider ability to pay—or any other factor—in granting Campoverde's request for reconsideration of detention. Rather, the immigration judge considered the evidence and then exercised her discretion in favor of granting Campoverde's motion—over the Government's opposition—and setting a bond.

Despite the fact that Campoverde presented evidence and argument regarding his ability to pay prior to the bond hearing and submitted updated evidence on that issue during the bond hearing, Campoverde's counsel asserted during oral argument that the immigration judge setting the bond in an amount

Campoverde could not pay was evidence that the immigration judge had not considered his ability to pay. (*Id.* at 45–48.) Campoverde's counsel additionally argued it is irrelevant whether evidence and argument on Campoverde's ability to pay was before the immigration judge during the hearing, because his challenge is to the statutory framework and constitutionality of § 1226(c). (*Id.*)[5]

Given the record of the bond hearing before the immigration judge and the additional background provided by counsel during oral argument, the court concludes that the immigration judge considered Campoverde's ability to pay during the bond hearing. Thus, although Campoverde's ability to pay argument is framed as a challenge to the statutory framework of § 1226(a) and a constitutional challenge, a writ of habeas corpus in this case would invariably amount to a finding that the immigration judge had not given *adequate* consideration to his ability to pay. Under § 1226(e) and § 1252(a)(2)(B)(ii), the court is barred from making such a finding. The jurisdictional bars of § 1226(e) and § 1252(a)(2)(B)(ii) allow the court to determine whether an immigration judge is required to consider

---

[5] At the court's direction, the parties during oral argument also addressed the line of procedural due process cases that began with *Mathews v. Eldridge*, 424 U.S. 319 (1976), and includes, most relevantly, *Abdulai v. Ashcroft*, 239 F.3d 542 (2001), and *Quinteros v. Warden Pike Cty. Corr. Facility*, 784 F. App'x 75 (2019). Campoverde's counsel clarified that while such cases provide procedural due process protections that must be present during immigration bond hearings, they do not form the basis of Campoverde's claims, which are substantive due process claims grounded in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Bearden v. Georgia*, 461 U.S. 660 (1983). (Transcript of Oral Argument at 3–5.) Thus, because *Mathews* and its progeny are not the basis for Campoverde's claims, the court will disregard that line of cases.

a detainee's ability to pay in a case where an immigration judge declined to consider that factor, but they do not allow the court to determine whether an immigration judge has given *adequate* consideration to that factor in a case where the immigration judge actually did consider the detainee's ability to pay, because that involves a review of the immigration judge's exercise of discretion. *Cf. Hernandez T. v. Warden, Essex Cty. Jail*, No. 19-CV-12584, 2020 WL 634235, at *3 (D.N.J. Feb. 11, 2020) (finding that subject matter jurisdiction was barred by § 1226(e) despite petitioner raising constitutional claim because the petitioner "has already received the very benefit he seeks" and the court "has no authority to second-guess the bond decisions of an immigration judge"); *Junior R. v. Sessions*, No. 18-CV-12054, 2019 WL 4597569, at *4 (D.N.J. Sept. 23, 2019) (finding that court lacked jurisdiction under § 1226(e) where petitioner had already been given the constitutional relief he sought).

Any relief that the court would grant Campoverde would amount to a determination that the immigration judge had not given adequate consideration to his ability to pay. Thus, although Campoverde's counsel explained the jurisdictional issue as a "chicken and egg" problem, the more apt avian metaphor for this case is that if it looks like a duck, swims like a duck, and quacks like a duck, then you should probably conclude that it's a duck. Here, the facts of the case show that Campoverde's claim is a challenge to the immigration judge's

discretionary judgment regarding bond; framing the argument as a constitutional challenge cannot change that reality. Accordingly, the court is barred from exercising subject matter jurisdiction over Campoverde's ability to pay argument under § 1226(e) and § 1252(a)(2)(B)(ii). *See, e.g.*, *Quinteros*, 784 F. App'x at 78–79 (denying petition for lack of jurisdiction to the extent the petition sought review of the exercise of discretion because such jurisdiction was barred under § 1226(e)).

Although the court lacks subject matter jurisdiction to consider Campoverde's ability to pay argument, it does not lack subject matter jurisdiction to consider his argument regarding the burden of proof. Unlike his ability to pay argument, Campoverde's argument that the government must bear the burden of proof during a § 1226(a) bond hearing presents a purely statutory and constitutional question that is not barred by § 1226(e) or § 1252(a)(2)(B)(ii), and the merits of this issue are discussed below.

### CAMPOVERDE DOES NOT HAVE STANDING FOR HIS ABILITY TO PAY CLAIM

In addition to the court lacking subject matter jurisdiction under the jurisdictional bars of § 1226(e) and § 1252(a)(2)(B)(ii), the court also declines to reach the merits on the ability to pay claim because Campoverde does not have standing to argue that an immigration judge is required to consider a detainee's ability to pay.

Because Article III of the United States Constitution only allows federal courts to decide cases and controversies, a petitioner must have standing to bring a claim in federal court. *Dep't of Comm. v. New York*, __ U.S. __, 139 S. Ct. 2551, 2565 (2019). Federal courts are required to raise issues of standing sue sponte if such issues are present. *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005) (citing *Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001)).

To establish standing, a petitioner must show that he has "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Virginia House of Delegates v. Bethune-Hill*, __ U.S. __, 139 S. Ct. 1945, 1950 (2019) (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). An injury is concrete and particularized if it "affects the [petitioner] in a personal and individual way." *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The petitioner's injury "must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016).

A federal court may not grant a writ of habeas corpus if a petitioner lacks standing. *In re Zettlemoyer*, 53 F.3d 24, 26 (3d Cir. 1995) (citing *Demosthenes v. Baal*, 495 U.S. 731, 737 (1990)). Additionally, for a petitioner to have standing to assert a violation of his constitutional rights, the petitioner "must allege a personal

loss and seek to vindicate a deprivation of his own constitutional rights." *Weaver*

*v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) (citing *Singleton v. Wulff*, 428 U.S. 106

(1976)). "A party has standing to challenge the constitutionality of a statute only

insofar as it has an adverse impact on his own rights. As a general rule, if there is

no constitutional defect in the application of the statute to a litigant, he does not

have standing to argue that it would be unconstitutional if applied to third parties in

hypothetical situations." *Cty. Ct. of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 155

(1979) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)).

The court raised the issue of standing sua sponte during oral argument on

March 10, 2020. (Transcript of Oral Argument at 50.) Specifically, the court

asked whether Campoverde would have standing to bring the petition if the

immigration judge had considered evidence regarding Campoverde's ability to

pay. (*Id.* at 50:16–23.) Campoverde's counsel argued that the court would have

standing in such a situation because Campoverde's claim challenges the standard

by which immigration judges consider a detainee's ability to pay. (*Id.* at 50–51.)

Counsel acknowledged that the immigration judge probably did consider ability to

pay during the hearing, *id.* at 51:8–10, but argued that Campoverde nevertheless

has standing because his claim challenges the legal standard underpinning the bond

hearing. (*Id.* at 50–51.) "Whether or not the judge may have done the right thing

is I think immaterial," counsel argued, "because the judge is operating under an

unconstitutional standard." (*Id.* at 52.) The court pressed counsel on this argument, asking whether Campoverde would have standing in the hypothetical situation where the immigration judge had set bond at the statutory minimum of $1,500, the factual background indicated Campoverde could not pay such an amount, and the immigration judge specifically stated that she had considered his limited ability to pay in setting bond at the statutory minimum. (*Id.* at 52–53.) Counsel conceded that the hypothetical presented a "tougher challenge," but nonetheless argued that Campoverde would retain standing to bring his petition in that hypothetical situation. (*Id.* at 53–54.) The court then asked counsel what Campoverde's injury was if the immigration judge had considered Campoverde's ability to pay. (*Id.* at 57–58.) Counsel argued that Campoverde's injury was that he had been given an unaffordable bond. (*Id.* at 58:2.)

Following the oral argument, the court ordered supplemental briefing on the issue of standing. (Doc. 27.) Specifically, the court required the parties to address the following question: "If the court concludes that the immigration judge considered Petitioner's ability to pay, does Petitioner have standing to challenge the statute at issue?" (*Id.* at 1.)

Campoverde's supplemental brief begins by attacking the premise of the question, arguing that a finding that the immigration judge considered his ability to pay would be an error for several reasons. (Doc. 29 at 1–3.) First, Campoverde

relies on *Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000) for the argument that a ruling on the merits must be separate and apart from a determination of whether he has standing to sue. (*Id.* at 1.) Second, Campoverde argues the court should not find that the immigration judge considered ability to pay because such a finding must be based on the actual record before the immigration judge under *Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1987), and the record here does not sufficiently show that the immigration judge considered that factor. (*Id.* at 2.) Third, Campoverde argues that a finding that the immigration considered ability to pay "is inconsistent with prevailing case law, which requires a judge to affirmatively make findings on the record regarding ability to pay," because such an affirmative finding was not made in this case. (*Id.*)

Campoverde further argues that he has standing "[e]ven if there is a finding that the IJ considered ability to pay." (*Id.* at 3.) Specifically, he argues he has suffered a "procedural injury" because the immigration judge "did not state, either verbally or in writing, whether non-monetary conditions of release were sufficient at achieving the government's goal that Petitioner appear at future hearings." (*Id.*)

Respondents argue that the question of standing hinges on whether the immigration judge considered Campoverde's ability to pay. (Doc. 30 at 2.) Respondents concede that Campoverde would have standing if the immigration

judge did not consider his ability to pay, but argue that Campoverde would not have standing if the immigration judge had considered his ability to pay. (*Id.*)

Here, the court concludes that Campoverde does not have standing to assert that an immigration judge is required to consider a detainee's ability to pay because he has not suffered a concrete and particularized injury. As detailed above, the transcript of proceedings before the immigration judge and further background provided by counsel during oral argument lead the court to conclude that the immigration judge considered Campoverde's ability to pay in setting bond at $10,000. While Campoverde's counsel argues that the amount of the bond by itself constitutes a sufficient injury to establish standing, such a position leads to the conclusion that *any* detainee could challenge the policy at issue—regardless of whether or how extensively the immigration judge considered the detainee's ability to pay—so long as a bond was ultimately imposed. (*See id.* at 52–53 (arguing that Campoverde would have standing even in hypothetical situation where bond was set at the statutory minimum and was based on express findings regarding ability to pay).) But such a "generally available grievance" is insufficient to establish standing where the petitioner does not have a personal stake in the outcome of the case. *Gill*, 138 S. Ct. at 1923 (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007)). That is precisely the situation here: Campoverde's ability to pay a bond was considered during his bond hearing, so an argument that the immigration judge

is required to consider ability to pay would not affect his personal rights. Accordingly, because Campoverde's constitutional claim does not "seek to vindicate a deprivation of his own constitutional rights," *Weaver*, 650 F.2d at 27, the court concludes that Campoverde has not suffered a concrete and particularized injury and does not have standing to bring his ability to pay argument. *See Virginia House of Delegates*, 139 S. Ct. at 1950.

None of Campoverde's arguments alter this court's conclusion that he does not have standing. The court addresses each of those arguments in turn. Campoverde's argument that the merits of the case must be separated from a determination of whether he has standing is unavailing because it is based on *Pitt News*, 215 F.3d at 354, which is distinguishable on its facts. The court in *Pitt News* considered whether a plaintiff had standing at the pleading stage of litigation when the plaintiff had filed a motion for preliminary injunction. *Id.* at 360. The court in *Pitt News* cautioned that "determination of the likelihood of success on the merits of the case is a separate inquiry from the threshold issue of Article III standing" and held that, at the pleading stage, "a plaintiff must only *allege* that they have suffered sufficient injury to comply with Article III's 'case or controversy' requirement." *Id.* To maintain a suit in federal court, however, a petitioner "must have standing at all stages of the litigation, and they bear the burden of proving it 'with the manner and degree of evidence required at the

successive stages of the litigation.'" *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) (first citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); then quoting *Lujan*, 504 U.S. at 561). The present case is therefore distinguishable from *Pitt News* because resolution of Campoverde's habeas corpus petition and his motion for preliminary injunction have been consolidated under Federal Rule of Civil Procedure 65(a)(2). (Doc. 17 at 2.) Campoverde must establish his standing "with the manner and degree of evidence" necessary to establish his right to habeas corpus relief, and the court finds that he has not made such a showing regarding standing.

*Marshall v. Lansing*, which forms the basis of Campoverde's second argument, is similarly distinguishable. In *Marshall*, the Third Circuit considered a determination by the United States Parole Commission that a petitioner's offense involved more than one kilogram and less than five kilograms of cocaine, which subjected him to a harsher offense severity rating than he would have otherwise received. 839 F.2d at 936. The commission's decision was based on a chain of inferential reasoning that was never explained by the commission. *Id.* at 937. The court noted that in reviewing an administrative agency's decision, "[a] court must review the agency's actual on-the-record reasoning process," which requires "a formal statement of reasons from the agency . . . not a *post hoc* rationalization or agency counsel's in-court reasoning." *Id.* at 943–44 (citing *Motor Vehicle Mfrs.*

*Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). The court clarified, however, that such a finding is not necessary where the agency's reasoning is "readily apparent" from the record. *Id.* at 944; *accord Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 257 (3d Cir. 2000).

Here, evidence regarding Campoverde's ability to pay was presented to the immigration judge both before and during the bond hearing and Campoverde presented argument on that factor through the filing of his motion for custody redetermination. (Transcript of Oral Argument at 33–37.) Although the immigration judge interrupted Campoverde's counsel before he could provide additional argument, Campoverde's counsel acknowledged during oral argument in this case that the evidence that was submitted "speaks for itself." (*Id.* at 36.) The present case is therefore distinguishable from *Marshall* because the immigration judge's reasoning is "readily apparent" from the record. *Marshall*, 839 F.2d at 944.

The third argument in Campoverde's supplemental brief does not change the court's conclusion because it is based on a comparison of Campoverde's bond hearing to bond hearings in the criminal context. (*See* Doc. 29 at 2–3.) That premise is flawed because detainees in criminal bond hearings do not bear the burden of proof but, as discussed in more detail below, detainees in § 1226(a) bond

hearings do bear the burden of proof.  *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018).

Finally, Campoverde's argument that he has suffered an injury from the immigration judge's failure to make an explicit finding regarding nonmonetary conditions of release is unavailing.  (*See* Doc. 29 at 3.)  As previously noted, Campoverde's due process argument is based on a substantive due process theory under *Zadvydas* and *Bearden*.  (*See supra* note 5.)  *Bearden* requires the government to consider "alternative means for effectuating" the government's purpose before imposing a bond.  *Bearden*, 461 U.S. at 667.  As Campoverde has previously acknowledged, however, an immigration judge adequately considers alternative means for effectuating the government's purpose when she "simply consider[s] the individual's financial circumstances and set[s] the bond at an affordable amount reasonably calculated to obtain his future appearance."  (Doc. 8 at 21.)  Here, the court has already concluded that the immigration judge considered Campoverde's ability to pay in imposing a $10,000 bond, so the immigration judge's failure to make an explicit finding as to that factor does not establish a concrete and particularized injury to Campoverde's due process rights.

Campoverde's reliance on *Rivera v. Holder*, 307 F.R.D. 539, 545–46, 548 (W.D. Wa. 2015) is also misplaced.  In that case, the plaintiff challenged a policy used by immigration judges in Seattle and Tacoma to "uniformly deny all requests

for 'conditional parole' under 8 U.S.C. § 1226(a) on the ground that the statutory provision restricts IJs to permitting aliens' release on a minimum $1,500 bond." *Id.* at 543. Unlike *Rivera*, there is no allegation that the immigration judge in this case refused to consider alternative conditions for Campoverde's release, nor is there any support in the record for such a theory. In addition, the present case is distinguishable from *Rivera* because Campoverde's counsel never requested alternative conditions of release either before or during the bond hearing. (*See generally* Doc. 19-1, Doc. 25-1.) Therefore, because Campoverde has not established a concrete and particularized injury to his constitutional rights and none of his arguments alter that conclusion, the court concludes that he does not have standing for his ability to pay argument.

Although the court concludes that Campoverde does not have standing to raise his ability to pay argument, such standing concerns are not present with regard to Campoverde's burden of proof argument. Because Campoverde was required to bear the burden of proof during the bond hearing, there is no question that he has suffered an injury to his constitutional rights and therefore that he has standing to argue that the government must bear the burden of proof during § 1226(a) bond hearings.

### Campoverde Did Not Need to Exhaust Administrative Remedies

Respondents additionally argue that the court may not consider Campoverde's petition because he failed to exhaust his administrative remedies before filing suit. (Doc. 19 at 32–34.) Because the court concluded above that it lacks subject matter jurisdiction over Campoverde's ability to pay argument, the court considers Respondents' exhaustion argument only as it pertains to Campoverde's claim that the government must bear the burden of proof during § 1226(a) bond hearings.

A petitioner seeking a writ of habeas corpus ordinarily must exhaust administrative remedies before seeking the writ in federal court. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion is excused, however, where a petition raises "constitutional or statutory claims" that the administrative agency "can neither consider nor correct." *Milosevic v. Ridge*, 301 F. Supp. 3d 337, 344 (M.D. Pa. 2003) (citing *Sewak v. Immigration & Naturalization Serv.*, 900 F.2d 667, 670 (3d Cir. 1990)). That is precisely the case here: Campoverde's petition argues that § 1226(a) and the Constitution require the government to bear the burden of proof during a bond hearing. Such statutory and constitutional questions cannot be decided by an immigration judge or the BIA, and accordingly Campoverde was not required to exhaust his administrative remedies before bringing this claim in federal court.

## CLAIR DOLL IS THE ONLY PROPER RESPONDENT

Under 28 U.S.C. § 2243, a writ of habeas corpus must be directed to the petitioner's custodian. The warden of the prison where a petitioner is held is considered the petitioner's custodian for purposes of a habeas corpus action. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Accordingly, Respondent Clair Doll, the warden of York County Prison, is the only proper respondent to this action. Respondents Simona Flores-Lund, Matthew Albence, Chad Wolf, and William Barr are therefore dismissed from this action.

## DISCUSSION

Having resolved all jurisdictional issues, the court turns now to the merits of Campoverde's claim that the government must bear the burden of proof during a § 1226(a) bond hearing. Although Campoverde raises both statutory and constitutional arguments in support of this claim, the court finds that separate analysis of the two is not necessary because both arguments are controlled by the Third Circuit's holding in *Borbot*, 906 F.3d at 279.

In *Borbot*, the Third Circuit considered a habeas corpus claim brought by a citizen of Russia who was detained pursuant to § 1226(a). *Id.* at 275. The petitioner had already been granted a bond hearing under § 1226(a), but argued in his petition that he was entitled to a second bond hearing "at which the government would bear the burden of justifying his continued detention." *Id.* In rejecting the

petitioner's claim, the Third Circuit acknowledged that § 1226(a) places the burden of proof on a detainee in a bond hearing, but held that such an allocation of the burden of proof does not violate the Constitution. *Id.* at 279.

Like the petitioner in *Borbot*, Campoverde argues that both the INA and the Constitution require the government to bear the burden of proof during § 1226(a) bond hearings. Because an identical claim was directly addressed by the Third Circuit in *Borbot*, that case controls the court's analysis here. *Id.*; *see also Jose L.P. v. Whitaker*, __ F. Supp. 3d __, 2019 WL 8138422, at *10 (D.N.J. Sept. 24, 2019) (finding that *Borbot* controlled court's conclusion and required court to reject argument that government was required to bear the burden of proof during a § 1226(a) bond hearing). Accordingly, Campoverde's petition is denied to the extent that it argues the government must bear the burden of proof during § 1226(a) bond hearings.

## CONCLUSION

For the foregoing reasons, Campoverde's petition for writ of habeas corpus (Doc. 1) is denied. An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: March 13, 2020